# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| LEE LEWIS,<br><br>      Plaintiff,<br><br>vs.<br><br>LEWIS ELECTRIC LLC, *et al.*,<br><br>      Defendants. | Case No. 19-cv-00527-DKW-KJM<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

In this unusual breach of contract action, Plaintiff Lewis seeks to hold Defendants Ibarra and Colarelli liable under the alter ego doctrine for breach of multiple contracts that were executed when Lewis sold Lewis Electric LLC to CCI, Inc. Shortly after the sale, Lewis alleges Ibarra and Colarelli, the then-current owners and executives of both entities, rendered Lewis Electric insolvent in bad faith. Both Defendant entities have failed to respond to this lawsuit, and Lewis has been unable to locate the individual Defendants other than Colarelli, leaving Colarelli as the only participating (or viable) Defendant in this action. Colarelli has filed a Rule 12(b)(6) motion, Dkt. No. 28, arguing the allegations in the complaint are insufficient to allege that he is the alter ego of either Lewis Electric or CCI.

Because Lewis' allegations, accepted as true, support the inference that there is a "unity of interest" between Colarelli and both Lewis Electric and CCI, and that

upholding the corporate fiction would bring about injustice and inequity or otherwise defeat rightful claims, Colarelli's motion to dismiss is DENIED.

## FACTUAL & PROCEDURAL BACKGROUND

Defendants Vince Colarelli and Adan Ibarra are owners, executives, and managers of Defendant CCI, Inc. *Id.* at ¶ 7. Plaintiff Lee Lewis is the former owner of Lewis Electric, LLC. *Id.* at ¶ 13. When Lewis decided to sell Lewis Electric to CCI, he executed four contracts (the "Contracts") in connection with the transaction: (1) a Membership Interest Purchase Agreement (MIP Agreement) with CCI, Dkt. No. 1-1; (2) a Promissory Note with CCI, Dkt. No. 1-2; (3) an Employment Agreement with Lewis Electric, Dkt. No. 1-3; and (4) a "Side Agreement" with Ibarra, Dkt. No. 1-4. These Contracts are the subject of the present controversy.

### A.    The Four Contracts

First, on February 16, 2015, Lewis and CCI entered into the MIP Agreement, Dkt. No. 1-1, with Ibarra signing on behalf of CCI. Dkt. No. 1, ¶¶ 13, 27. In relevant part, the MIP Agreement provided that Lewis would sell Lewis Electric to CCI for $185,000, payable in the form of a promissory note. *Id.* at ¶ 13; Dkt. No. 1-1, ¶ 2.2.

Second, on February 16, 2015, CCI issued Lewis a Promissory Note in the principal amount of $185,000, plus five percent interest annually. Dkt. No. 1, ¶¶ 14, 45. In the Promissory Note, CCI agreed to pay the principal and interest by

December 31, 2018, according to a payment schedule attached to the Promissory Note.  Dkt. No. 1-2, ¶ 1; *id.* at 17, 21.

Third, pursuant to Exhibit 2.4(a)(iii) to the MIP Agreement, Dkt. No. 1-1, ¶ 2.4(a)(iii), Lewis and Lewis Electric entered into a February 16, 2015 Employment Agreement, Dkt. No. 1-3, with Ibarra signing on behalf of Lewis Electric.  Dkt. No. 1, ¶¶ 15, 33.  The Employment Agreement provides that, upon sale, Lewis would be an employee of Lewis Electric and receive an annual salary of no less than $175,000 with 3% annual increases, repayment of expenses, and the potential to receive bonuses.  Dkt. No. 1, ¶ 15; Dkt. No. 1-3, ¶ 4(A)–(D).

Lastly, Lewis and Ibarra entered into a January 27, 2015 Side Agreement, Dkt. No 1-4.  Dkt. No. 1, ¶ 16.  Under this agreement, Lewis agreed to "relinquish the corporate line of credit of Lewis Electric in exchange for 50% of Adan Ibarra & Mary Ibarra['s] share of [the] net revenue in Lewis Electric" until Lewis had received a total of $1.4 million in distributions.  Dkt. No. 1-4; Dkt. No. 1, ¶ 16.  Defendant Mary Ibarra (Mary) was allegedly a stakeholder in Lewis Electric after Lewis sold the company to CCI.  Dkt. No. 1, ¶ 24.

## B.    Ibarra and Colarelli Render Lewis Electric Insolvent

When Lewis sold Lewis Electric, he alleges it was a profitable and successful business with an appraised value of $3.7 million and approximately $60 million in work under contract.  *Id.* at ¶ 19.  After Lewis sold the company, Ibarra and Colarelli

became the owners, executives and managers of both Lewis Electric and CCI.  Dkt. No. 1, ¶¶ 7–9.

Lewis avers that Ibarra and Colarelli functioned as the "alter egos" of Lewis Electric and CCI in that they "treated corporate assets as their own and abused the corporate form."  *Id.* at ¶ 9.  In particular, on June 23, 2015, Ibarra allegedly used $679,000 of Lewis Electric's funds "to pay debts owed by other entities under Colarelli and Ibarra's control."  *Id.* at ¶ 20.  As a result, Lewis Electric issued checks to employees that were returned for insufficient funds, key employees left Lewis Electric, vendors could not be paid, and contracts were cancelled.  *Id.* at ¶¶ 20–21.  While Lewis Electric was in seemingly dire financial straits, Ibarra and Colarelli allegedly "continued to pilfer the accounts of Lewis Electric, using them as a personal piggy bank."  *Id.* at ¶ 21.  Lewis claims that Defendant Mary "aided Ibarra in reneging on the obligations" in the Side Agreement by concealing "Ibarra's and/or Lewis Electric's assets in [her] personal bank accounts for purposes of avoiding detection."  *Id.* at ¶¶ 24–25.  Lewis claims that Lewis Electric is now insolvent because Ibarra and Colarelli made "numerous withdrawals" from Lewis Electric's accounts.  *Id.* at ¶¶ 19, 51.

As for Lewis, he has not received a payment on the Promissory Note since June 20, 2016, having received only $83,391.26 in principal and $10,733.69 in interest.  *Id.* at ¶ 17.  Lewis also has not received any payment under the Side

Agreement. *Id.* at ¶ 34. In addition, although Lewis was employed by Lewis Electric until July 21, 2017, he has not received his salary or been reimbursed for expenses since June 20, 2016. *Id.* at ¶ 18. Lewis maintains that Defendants Ibarra, Colarelli, CCI, and Lewis Electric engaged in "acts of self-dealing" and "conspired in bad faith to unfairly render Lewis Electric insolvent" in order to prevent Lewis from receiving the benefits bargained for under the Contracts. *See id.* at ¶ 22, 51–52.

### C. Procedural History

Lewis filed this action on October 3, 2019, asserting the following five counts under Hawaii law: (1) "CCI, through . . . Ibarra and Colarelli,'" breached the MIP Agreement (2) "Lewis Electric, through . . . Ibarra and Colarelli," breached the Employment Agreement; (3) Ibarra breached the Side Agreement; (4) "CCI, through . . . Ibarra and Colarelli," breached the Promissory Note; and (5) breach of the implied covenant of good faith. Dkt. No. 1, ¶¶ 30, 36, 42, 48, 51–52.

Lewis properly served Defendants Lewis Electric, CCI, and Colarelli with a copy of the Complaint and Summons. Dkt. Nos. 16, 17, 27. The registered agent who accepted service for Lewis Electric and CCI is John M. Stinar, an attorney with the law firm Stinar Zendejas & Gaithe, PLLC, (SZG), Dkt. Nos. 16, 17, which is also consistent with the "Notices" provision in the MIP Agreement. Dkt. No. 1-1 at 47–48. SZG is also representing Colarelli in this action. Dkt. No. 33.

After certified process servers were unable to serve Defendants Mary and Adan Ibarra, *see* Dkt. Nos. 34-1 34-2, 34-3, the Court granted Lewis' request to effectuate service of process by publication in accordance with Haw. Rev. Stat. § 643-36. Dkt. No. 35. On March 12, 2020, the Summons for Defendants Mary and Adan Ibarra was published for the last time in a local newspaper. Dkt. No. 45. Defendants Mary and Adan Ibarra have yet to file any responsive pleading.

On December 19, 2019, Defendant Colarelli filed the instant motion to dismiss under Rule 12(b)(6), arguing that he is not a party to the Contracts underlying Lewis' claims and that Lewis has failed to adequately allege an alter ego theory of liability. Dkt. No. 28 at 6–10.

When Lewis Electric and CCI failed to file a response to the complaint within the time permitted by Fed.R.Civ.P. 12(a), and after each was defaulted, Lewis moved for entry of default judgment against Lewis Electric and CCI. Dkt. Nos. 18, 22. Lewis Electric and CCI did not respond. Rather, Defendant Colarelli, in his individual capacity, filed an opposition to Lewis' motion for default judgment against these entities, Dkt. No. 37. In his opposition, Colarelli argued that he is not a proper defendant, other defendants should be permitted to conduct discovery, the Ibarra Defendants had not been served, and his motion to dismiss was still pending. Colarelli, however, did not dispute that the registered agents for CCI and Lewis Electric had been personally served with a copy of the Summons and Complaint. *Id.*

at 5; *cf.* Dkt. No. 22 at 9. The Magistrate Judge denied Lewis' motion for entry of default judgment. Dkt. No. 39. As of the date of this Order, Lewis Electric and CCI have not filed a responsive pleading, nor has an attorney entered a notice of appearance on behalf of either entity.

Defendant Colarelli's motion to dismiss has been fully briefed by all concerned and is now ripe for resolution.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient fact[s] . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed.R.Civ.P. 8(a)(2). Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

In ruling on a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and draw "any reasonable inferences" in favor of the plaintiff. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1122 (9th Cir. 2008). To that end, a court must judge the sufficiency of a complaint under a two-pronged approach: (1)

disregard all "legal conclusions"; and (2) determine whether the remaining "well-pleaded factual allegations," accepted as true, "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 678–81. Dismissal is warranted "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886 (9th Cir. 2018) (quoting *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017)).

Accordingly, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. That is, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted). If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

**<u>DISCUSSION</u>**

Because it is undisputed that Colarelli is not a party to the Contracts Lewis alleges were breached, the sole issue before the Court in Colarelli's motion to dismiss is whether the complaint contains sufficient facts to plausibly suggest that Colarelli is the "alter ego" of CCI and Lewis Electric such that Colarelli may be held liable under the relevant Contracts to which CCI and Lewis Electric are signators. For the reasons that follow, the Court answers that question in the affirmative.

### A.     Legal Framework: Alter Ego Liability

Whether alter ego liability applies is determined by the law of the forum state. *Goodrich v. Briones* (In re *Schwarzkopf*), 626 F.3d 1032, 1037 (9th Cir. 2010). In Hawaii, the alter ego doctrine allows courts to "look past a corporation's formal existence" to hold "controlling individuals liable for 'corporate' obligations" when the "corporation is the mere instrumentality or business conduit of another corporation or person." *See Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co.*, 982 P.2d 853, 869–70 (Haw. 1999) (citation and internal quotation marks omitted), *superseded by statute on other grounds as noted in Davis v. Four Seasons Hotel Ltd.*, 228 P.3d 303, 308 n.9 (Haw. 2010). "[T]he alter ego doctrine does not create a separate cause of action, but rather, creates a means for an individual (the alter ego) to be held personally liable for a cause of action against a corporate entity." *Calipjo v. Purdy*, 439 P.3d 218, 234 (Haw. 2019). In this way, a plaintiff may rely

on the alter ego theory to "pierce the corporate veil" and "reach a second corporation or individual upon a cause of action that otherwise would have existed only against the first corporation . . . ., such as a tort or breach of contract." *See Robert's*, 982 P.2d at 870 (citations and internal quotation marks omitted).

To pursue alter ego liability under Hawaii law, a plaintiff must satisfy a two-part test by alleging that: (1) a "corporation is not only influenced and governed by [a] person, but that there is such a unity of interest . . . that the individuality, or separateness, of such person and corporation has ceased"; and (2) "an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice." *Calipjo*, 439 P.3d at 229 (quoting *Robert's*, 982 P.2d at 871). A "unity of interest" means "their general corporate actions are guided or determined not by two separate . . . consciousness, but one[.]" *Calipjo*, 439 P.3d at 229–30 (quoting *Robert's*, 982 P.2d at 871, 882). To guide courts in evaluating whether an individual may be held liable as the alter ego of a corporation, the Hawaii Supreme Court has identified twenty-five (25) factors to consider, with no one factor being dispositive.[1] *Robert's*, 982 P.2d at 871–

---

[1]These factors include:

[1] Commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses; [2] the treatment by an individual of the assets of the corporation as his own; [3] the failure to obtain authority to issue stock or to subscribe to or issue the same; [4] the holding out by an individual that he is personally liable for the debts of the corporation; [5] the identical equitable

72; *accord Calipjo*, 439 P.3d at 229 n.23.   Although "the question whether a corporation is . . . [the] alter ego of another corporation or individual is one of fact" that often involves "complex economic questions," *Robert's*, 982 P.2d at 867–68, at the pleading stage, a plaintiff must nonetheless allege sufficient facts to plausibly

---

ownership in the two entities; [6] the identification of the equitable owners thereof with the domination and control of the two entities; [7] identity of . . . directors and officers of the two entities in the responsible supervision and management; [8] sole ownership of all of the stock in a corporation by one individual or the members of a family; [9] the use of the same office or business location; [10] the employment of the same employees and/or attorney; [11] the failure to adequately capitalize a corporation; [12] the total absence of corporate assets, and undercapitalization; [13] the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation; [14] the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities; [15] the disregard of legal formalities and the failure to maintain arm's length relationships among related entities; [16] the use of the corporate entity to procure labor, services or merchandise for another person or entity; [17] the diversion stockholder [sic] or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another; [18] the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability, or the use of a corporation as a subterfuge of illegal transactions; and [19] the formation and use of a corporation to transfer to it the existing liability of another person or entity.

*Robert's*, 982 P.2d at 871 (alterations in original; emphasis omitted) (quoting *Associated Vendors, Inc. v. Oakland Meat Co.*, 26 Cal. Rptr. 806, 838–40 (Cal. Dist. Ct. App. 1962)).  The court noted other factors, including:

> (1) incorporation for the purpose of circumventing public policy or statutes; (2) whether the parent finances the subsidiary; (3) whether the subsidiary has no business or assets except those conveyed to it by the parent; (4) whether the parent uses the subsidiary's property as its own; (5) whether the directors of the subsidiary do not act independently in the interest of the corporation but take their orders from and serve the parent; and (6) whether the "fiction of corporate entity . . . has been adopted or used to evade the provisions of a statute."

*Id.* (quoting *Kavanaugh v. Ford Motor Co.*, 353 F.2d 710, 717 (7th Cir. 1965)).

support both elements of the alter ego test. *See, e.g.*, *Holley v. Crank*, 400 F.3d 667, 674–75 (9th Cir. 2004); *Ovation Toys Co. v. Only Hearts Club*, 675 F. App'x 721, 724 (9th Cir. 2017) (holding that the allegations in the complaint were conclusory or otherwise insufficient to establish alter ego liability).[2] As relevant here, courts do not lump together multiple individuals and entities in determining alter ego liability.[3] The Court, therefore, assesses Colarelli's alter ego status on an individual basis for Lewis Electric and CCI.

### B. Alter Ego Liability for Lewis Electric's Contractual Obligations

Applying the above framework, Colarelli may appropriately be held liable for Lewis Electric's breach of the Employment Agreement because Lewis' allegations plausibly suggest that Colarelli is the alter ego of Lewis Electric and that recognition of the corporate fiction in this case would result in injustice or inequity.

### 1. Unity of Interest Between Colarelli and Lewis Electric

With respect to Colarelli and Lewis Electric, Lewis' allegations suffice as to the first element—unity of interest or "control." Lewis alleges Colarelli and Ibarra "pilfered the accounts of Lewis Electric to benefit themselves," Dkt. No. 1, ¶ 52,

---

[2]*See also Stewart v. Screen Gems-Emi Music, Inc*., 81 F. Supp. 3d 938, 961 (N.D. Cal. 2015) (collecting cases from federal district courts); *accord Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1042–43 (C.D. Cal. 2015).

[3]*See Robert's*, 982 P.2d at 875 n.18, 890 (holding that although an individual defendant was "a key figure in the shell scheme, *i.e.*, a "94% owner and C.E.O." of the parent company and an officer and director of two subsidiary companies, the evidence suggested the individual "was acting as the owner and leader of the corporations, rather than as their alter ego").

used Lewis Electric's accounts "as a personal piggy bank," *id.* ¶ 21, and "treated corporate assets as their own," *id.* at ¶ 9. In terms of the *Robert's* factors, these allegations suggest Colarelli "commingl[ed]" funds or other assets, diverted "corporate funds or assets to other than corporate uses," and "treat[ed] . . . the assets of the corporation as his own." *See Robert's*, 982 P.2d at 871 (factors (1) and (2)).

Lewis further alleges that because Colarelli and Ibarra made "numerous withdrawals" from Lewis Electric's accounts in the course of "self-dealing," Lewis Electric was rendered insolvent, Dkt. No. 1, ¶¶ 20, 51, (indicating a "failure to adequately capitalize [the] corporation" and eventually a "total absence of corporate assets, and undercapitalization"). *Robert's*, 982 P.2d at 871 (factors (11) and (12)); *Calipjo*, 439 P.3d at 231. As such, the consciousness of Colarelli and Ibarra was guiding Lewis Electric's actions and objectives because Lewis Electric suffered a detriment as a result of the alleged transfers from Lewis Electric's accounts, while Colarelli and Ibarra directly and personally benefitted. *Calipjo*, 439 P.3d at 231–32.

It is also telling that the four contracts in question were executed in connection with CCI purchasing Lewis Electric, after which Colarelli and Ibarra became the "owners, executives, and managers" of both Lewis Electric and CCI, Dkt. No. 1, ¶¶ 7–8, (indicating that there is "identical equitable ownership in the two entities" and "domination and control of the two entities"). *See Robert's*, 982 P.2d at 871 (factors 5 and 6). Thereafter, Lewis avers Colarelli and Ibarra quickly rendered

Lewis Electric insolvent to achieve the objective of preventing Lewis from receiving the promised benefits of the Contracts, Dkt. No. 1, ¶¶ 22, 51–52, and indeed, Lewis alleges that he has not received such benefits, *id.* at ¶¶ 17–18, 34. As a result, there is at least a reasonable inference that Colarelli "contract[ed] with another with intent to avoid performance by use of a corporate entity as a shield against personal liability." *Robert's*, 982 P.2d at 871 (factor (18)); *Calipjo*, 439 P.3d at 232.

In addition, Lewis has pointed to evidence in the record that indicates Colarelli and Lewis Electric employ the same attorneys. *Robert's*, 982 P.2d at 871 (factor (10)); *cf.* Dkt. No. 41 at 7, 9–10. A copy of the Complaint and Summons was served on Lewis Electric's registered agent, John M. Stinar, an attorney at the SZG law firm. Dkt. No. 17. The SZG law firm is also representing Colarelli in his individual capacity. Dkt. No. 33. Moreover, the lynchpin in the "unity of interest" between Colarelli and Lewis Electric is the fact that when Lewis moved for a default judgment *against Lewis Electric*—Colarelli opposed the motion in his individual capacity—not Lewis Electric. Dkt. No. 37. Colarelli cannot stand in the shoes of Lewis Electric and then seriously maintain the façade of a separate existence. Therefore, the allegations and the totality of the circumstances strongly suggest that "the individuality, or separateness, of such person and corporation has ceased."

*Robert's*, 982 P.2d at 871.[4]

Notwithstanding that at least eight (8) of the *Robert's* factors are present in this case, Colarelli argues Lewis has merely "listed factors." Dkt. No. 28 at 9. On the contrary, the complaint in this case is clearly distinguishable from that in *Hawaii Masons' Pension Trust Fund v. Global Stone Haw., Inc.*, 292 F. Supp. 3d 1063 (D. Haw. 2017), where the trust fund plaintiffs simply provided a list of (26) factors and alleged that "'all or some' of them are 'relevant,'" *id.* at 1078–79. Relatedly, Colarelli contends Lewis' allegations are insufficient to establish the *Robert's* factors noted above because he has not alleged "dates, specifics, or bona fides." Dkt. No. 43 at 5. The Court is not persuaded. Colarelli is essentially asking this Court to impose the heightened pleading requirements of Rule 9(b) and require Lewis to plead "the who, what, when, where, and how of the misconduct charged" in the complaint. *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (citations and internal quotation marks omitted). Rule 9(b), however, makes no mention of claims based on the alter ego theory, and the Supreme Court has "declined to extend" Rule 9(b) to cover theories not referenced, such as municipal liability and employment discrimination. *Swierkiewicz v. Sorema N.A.*, 534 U.S.

---

[4]Lewis contends there are other *Robert's* factors alleged in the complaint; namely, factors (15) and (17). *See* Dkt. No. 41 at 6–7. But these arguments are unavailing. The fact that "*Ibarra* removed $679,000 from Lewis Electric's coffers in order to pay debts owed by other entities under Colarelli and Ibarra's control," Dkt. No. 1, ¶ 20, would suggest that *Ibarra* is the alter ego of Lewis Electric but it says nothing about Colarelli's alter ego status. The complaint does not allege that Colarelli had any involvement with this transaction.

506, 513 (2002).  As such, it follows that complaints in alter ego cases, "as in most others, must satisfy only the simple requirements of Rule 8(a)."  *Swierkiewicz*, 534 U.S. at 513.[5]

Lewis' complaint "does not need detailed factual allegations," *Twombly*, 550 U.S. at 555, and Rule 8(a) "does not impose a probability requirement at the pleading stage . . ."  *Id*. at 556.  Therefore, Lewis has satisfied his burden at the pleading stage by providing more than "a formulaic recitation of the elements" of an alter ego theory, *Twombly*, 550 U.S. at 555, and the allegations cannot be fairly characterized as "legal" conclusions so as to strip them of the presumption of truth.  *Iqbal*, 556 U.S. at 678; *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  To require anything more would relegate Lewis to "the hypertechnical, code-pleading regime of a prior era."  *Iqbal*, 556 U.S. at 678–79.

"Viewing the allegations of the complaint as a whole" and in the light most favorable to Lewis, *see Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 47

---

[5]Moreover, Ninth Circuit case law suggests that a plaintiff's alter ego allegations are not subject to Rule 9(b)'s heightened scrutiny.  *See Holley*, 400 F.3d at 674–75; *Ovation Toys*, 675 F. App'x at 724.  And district courts in this circuit agree that Rule 9(b) does not apply insofar as the plaintiff's alter ego theory does not involve fraud-based allegations.  *See, e.g.*, *Risinger v. SOC LLC*, 936 F. Supp. 2d 1235, 1242 n.2 (D. Nev. 2013) (declining to impose a heightened pleading requirement for the elements of an alter ego theory); *Brighton Collectibles, Inc. v. Winston Brands, Inc.*, No. 11-cv-2191-GPC, 2013 WL 394060, at *3 (S.D. Cal. Jan. 30, 2013) (same); *Pac. Gas & Elec. Co. v. Jesse M. Lange Distrib., Inc.*, No. 05-1180-DFL-KJM, 2005 WL 3507968, at *3–4 (E.D. Cal. Dec. 21, 2005) (refusing to impose heightened pleading requirements where underlying allegations are not of fraud); *Ardente, Inc. v. Shanley*, No. 07-4479 MHP, 2010 WL 546485, at *4 (N.D. Cal. Feb. 10, 2010) (concluding that heightened pleading requirements are inapplicable because alter ego liability is a doctrine, not a cause of action).

(2011), the Court concludes that the allegations suffice to "allo[w] the court to draw the reasonable inference" that Colarelli engaged in the misconduct alleged and "'raise a reasonable expectation that discovery will reveal evidence' satisfying the [unity-of-interest] requirement." *See id.* at 46 (first quoting *Iqbal*, 556 U.S. at 678; and then quoting *Twombly*, 550 U.S. at 556). Discovery may lead to a different outcome, but at this preliminary stage in the litigation, Lewis has adequately alleged that Colarelli is the alter ego of Lewis Electric.

## 2. Maintaining Lewis Electric's Corporate Fiction Would "Sanction a Fraud or Promote Injustice"

The complaint also supports the second element necessary for alter ego liability in that "adherence to the fiction of the separate existence of [Lewis Electric] would . . . sanction a fraud or promote injustice." *Robert's*, 982 P.2d at 871. The salient question in making this determination is whether the plaintiff is "attempting to pierce the corporate veil as a means of imposing liability on an underlying cause of action, such as a . . . breach of contract, incurred solely by" the corporation. *Id.* at 875. That is precisely the case here.

As the Hawaii Supreme Court has observed, the hallmark of alter ego liability exists "when there is evidence that the corporate fiction has been used to . . . defeat a rightful claim." *Id.* at 870–71 (quoting *Chung v. Animal Clinic, Inc.*, 636 P.2d 721, 723 (Haw. 1981). Accepting the allegations in the complaint as true, Lewis Electric and Lewis executed the Employment Agreement, and then Colarelli and Ibarra

rendered Lewis Electric insolvent by siphoning off Lewis Electric's assets for personal or non-corporate uses to defeat Lewis' claim to his salary and other benefits under the Employment Agreement. That Lewis Electric has failed to make any appearance in this litigation, despite its registered agent having been served with the Summons and Complaint, supports the inference that Lewis Electric is insolvent. Under these circumstances, Lewis would indeed suffer "an injustice" as a result of Colarelli's actions as the alter ego of Lewis Electric. *See Calipjo*, 439 P.3d at 232 (holding that refusing to pierce the corporate veil would "sanction a fraud or promote injustice" where the evidence supported the finding that defendant "intended to renege" on the contracts).[6]

Colarelli's reliance on *Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105, 1113 (9th Cir. 1979) is unavailing. *Seymour* announced a three-prong "alter ego" test as part of "federal substantive law," *see* 605 F.2d at 1110–11, in a line of cases that applies in actions to enforce labor organization contracts under section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. 185(a), or actions brought under 29 U.S.C. Section 1451 of the Employee Retirement Income Security Act of 1974 (ERISA). *See, e.g.*, *Board of Trustees v. Valley Cabinet & Mfg. Co.*, 877 F.2d 769, 770, 772–73 (9th Cir. 1989); *UA Local 343 of the United Ass'n of*

---

[6]*See also Hillhouse v. Hawaii Behavioral Health, LLC*, No. 14-00155 LEK, 2015 WL 3448706, at *5 (D. Haw. May 29, 2015) (finding injustice did not exist because plaintiff did "not allege that [the company] is insolvent").

*Journeymen & Apprentices of the Plumbing & Pipefitting Indus. v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1469–70 (9th Cir. 1994) ("Out of concern . . . that some contractors would use double-breasted operations to avoid their collective bargaining obligations, the courts and the NLRB have developed two conceptually related, but distinct theories – 'single employer' and 'alter ego' – to guard against such abuse."); *Carpenters' Local Union No. 1478 v. Stevens*, 743 F.2d 1271, 1275–77) ("The alter ego doctrine applies in circumstances in which the bargaining unit of the signatory company is effectively the same as that of the nonsignatory company."); *see also Bd. of Cement Masons S. Calif. Health Welfare Fund v. Galvan & Brown Concrete Decking, Inc.*, No. 09-4215 CBM, 2009 WL 10675912, at *1, *3–5 (C.D. Cal. Dec. 4, 2009). "The alter ego doctrine as developed in labor law is analytically different from the traditional veil-piercing doctrine as developed in corporate law." *UA Local 343*, 48 F.3d at 1475. Under applicable Hawaii law, *Schwarzkopf*, 626 F.3d at 1037, Lewis has shown that a refusal to look past the corporate fiction of Lewis Electric would "promote injustice." *See Robert's*, 982 P.2d at 871 (factor (18)); *Calipjo*, 439 P.3d at 232.

Accordingly, Lewis has alleged a plausible claim for breach of the Employment Agreement against Colarelli under the alter ego theory.

## C.     Alter Ego Liability for CCI's Contractual Obligations

For reasons similar to those articulated above, Lewis has stated a claim for breach of the MIP Agreement and Promissory Note against Colarelli as the alter ego of CCI.

Lewis has satisfied the first element—unity of interest or "control." Although there are more of the *Robert's* factors that pertain to Colarelli as the alter ego of Lewis Electric, Lewis' allegations with respect to Colarelli and CCI satisfy at least four factors.   Courts have held that two or three factors in support of the unity-of-interest requirement is sufficient to defeat a motion to dismiss. *See, e.g.*, *Daewoo Elecs. Am. Inc. v. Opta Corp.*, No. 13-1247 JSW, 2013 WL 3877596, at *5 (N.D. Cal. July 25, 2013); *Risinger*, 936 F. Supp. 2d at 1242 & n.2; *Pac. Mar. Freight, Inc. v. Foster*, No. 10-cv-0578, 2010 WL 3339432, at *6 (S.D. Cal. Aug. 24, 2010) (collecting cases).

First, Lewis alleges Colarelli and Ibarra treated CCI's "corporate assets as their own," *id.* at ¶ 9, (indicating that Colarelli "commingl[ed]" funds or other assets, diverted "corporate funds or assets to other than corporate uses," and "treat[ed] . . . the assets of the corporation as his own"). *See Robert's*, 982 P.2d at 871 (factors (1) and (2)). Second, Colarelli and Ibarra are the "owners, executives, and managers" of both Lewis Electric and CCI, Dkt. No. 1, ¶¶ 7–8, (suggesting that there is "identical equitable ownership in the two entities" and "domination and control of

- 20 -

the two entities"). *See Robert's*, 982 P.2d at 871 (factors 5 and 6); *Kahili, Inc. v. Yamamoto*, 506 P.2d 9, 11–12 (Haw. 1973) (holding that two individuals were the alter ego of a corporation and piercing the corporate veil because (1) two shareholders owned all stock, (2) corporation was undercapitalized, and (3) evidence suggested they were acting for their behalf rather than for the corporation). Third, Colarelli and CCI are both represented by the SZG law firm. *Robert's*, 982 P.2d at 871 (factor (10)); Dkt. No. 16 (Summons for CCI); Dkt. No. 33. Fourth, there is a reasonable inference that Colarelli "contract[ed] with another with intent to avoid performance by use of a corporate entity as a shield against personal liability." *Robert's*, 982 P.2d at 871 (factor (18)). Indeed, when Lewis moved for a default judgment *against CCI*—Colarelli alone opposed the motion in his individual capacity. Dkt. No. 37. CCI has not made any appearance in this case. Therefore, under this state of affairs, and accepting the allegations as true, Lewis has plausibly alleged a "unity of interest" between Colarelli and CCI in that their general corporate actions appear to be guided by one consciousness. *Calipjo*, 439 P.3d at 229–30.

With respect to the second element—whether upholding the corporate form would "sanction a fraud or promote injustice"—the same rationale set forth above as to Lewis Electric applies to CCI. Lewis and CCI executed the MIP Agreement and Promissory Note and shortly thereafter, Colarelli used CCI's corporate assets as his own and then payments on the Promissory Note stopped. It has been nearly four

years since Lewis received a payment from CCI on that Note. Dkt. No. 1, ¶¶ 9, 17. Although Lewis has not alleged that CCI is insolvent, CCI has not bothered to defend this action, and Lewis' attempt to obtain a default judgment against the entity was frustrated *by Colarelli*. To now recognize the corporate fiction and dismiss Colarelli at this preliminary stage would surely "bring about injustice and inequity" for Lewis and otherwise "defeat a rightful claim." *Robert's*, 982 P.2d at 870–71 (quoting *Chung*, 636 P.2d at 723).

Accepting the allegations in the complaint as true, and in light of the reality that alter ego liability involves "complex economic questions" generally reserved for a jury, *Robert's*, 982 P.2d at 867–68, the Court concludes that Lewis has stated a plausible claim for breach of the MIP Agreement and Promissory Note against Colarelli under the alter ego theory.

## CONCLUSION

For the reasons set forth herein, Plaintiff has sufficiently alleged that Defendant Vince Colarelli is the alter ego of CCI, Inc., and Lewis Electric LLC, for

//

//

//

purposes of the claims alleged in the Complaint. Colarelli's Motion to Dismiss, Dkt. No. 28, is DENIED.

IT IS SO ORDERED.

DATED: April 7, 2020 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Lee Lewis v. Lewis Electric LLC, et al.*; Civil No. 19-00527-DKW-KJM; **ORDER DENYING DEFENDANT'S MOTION TO DISMISS**