IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| LEE LEWIS,<br><br>      Plaintiff,<br><br>vs.<br><br>LEWIS ELECTRIC, LLC, *et al.*,<br><br>      Defendants. | Case No. 19-cv-00527-DKW-KJM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION** |

Plaintiff Lee Lewis moves for partial reconsideration ("motion") of the Court's December 27, 2021 Order ("Prior Order"), arguing that the Court erred in denying default judgment against Defendant Adam Ibarra ("Adam"). More specifically, Lewis contends that the Court erred in failing to find Defendants Lewis Electric, LLC ("LE") and CCI, Inc. ("CCI") to be the alter ego of Adam. Having reviewed the motion, and revisited the relevant authorities, the Court agrees that the Prior Order requires reconsideration in part. Specifically, in light of the findings reached therein, the Prior Order could be construed as requiring a party such as Lewis to allege facts pertaining to *all* of the factors considered under Hawaiʻi law for whether a "unity of interest" exists between an individual and a corporation for purposes of alter-ego liability. With respect to the default judgment Lewis seeks,

any such construction of the Prior Order would be erroneous. That, however, is only half the battle. Lewis must still show, through his allegations (which are accepted as true), that a "unity of interest" existed between Adam, LE, and CCI. Here, the alleged facts sufficiently show a unity of interest between Adam and LE. The same is not true, though, as between Adam and CCI. Therefore, as more fully explained below, the motion is GRANTED IN PART and DENIED IN PART.

## RELEVANT PROCEDURAL BACKGROUND[1]

In the Prior Order, the Court granted Plaintiff's motion for default judgment ("default motion") against CCI and Defendant Lewis Electric, LLC ("LE") and denied the default motion against Adam and Mary Ibarra ("Mary"). Dkt. No. 165. With respect to CCI and LE, the Court entered default judgment in the amount of $129,551.16 against CCI and $255,504.37 against LE. Dkt. No. 166. With respect to Adam, however, the Court found that default judgment was inappropriate because Plaintiff had failed to allege sufficient facts to support his theory of alter-ego liability against Adam. Dkt. No. 165 at 16-20. More specifically, the Court found that, although Plaintiff had alleged that up to 13 "unity of interest" factors under Hawai'i law had been met, there were still at least 12 factors that had been unaddressed. *Id*. at 19.

---

[1] Additional background, factual and procedural, is set forth in the Prior Order and incorporated herein by reference. Dkt. No. 165 at 2-8.

In the instant motion, Dkt. No. 167, Lewis asks this Court to reconsider that finding. Specifically, Lewis argues that he should not have been required to address all of the "unity of interest" factors, and the allegations made with respect to 13 different factors were sufficient to establish a unity of interest between Adam, CCI, and LE. *Id*. at 5-9.[2]

Although the Court set deadlines for further briefing on the motion, Dkt. No. 168, those deadlines have now passed, and no further briefing has been received. In other words, Adam has (again) failed to respond to Plaintiff's request for relief. With briefing therefore complete, this Order follows.

## **LEGAL STANDARD**

A motion for reconsideration filed less than 28 days after the entry of judgment is construed under Rule 59(e) of the Federal Rules of Civil Procedure. *Cf. Gould v. Mut. Life Ins. Co. of New York*, 790 F.2d 769, 772 (9th Cir. 1986) ("Gould's motion … was not denominated a Rule 60(b) motion. But, since it followed final judgment and was not within the time limits of Rule 59(e), we may consider it a Rule 60(b) motion."); *see Croomes v. Stream Global Services-AZ, Inc.*, 2012 WL 2946498, at *1 (D. Ariz. July 19, 2012); Fed.R.Civ.P. 59(e).

> In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct

---

[2] Lewis does not seek reconsideration of the Court's findings with respect to Mary Ibarra, or with respect to the Court's other determinations, such as those regarding the recovery of attorneys' fees, interest, and business expenses. Therefore, the Court does not further address the same herein.

> manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law.

*Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011).

Here, although not expressly stated, in light of the arguments Plaintiff makes, it appears that the first ground−manifest error of law−is relied upon. While undefined, a manifest error of law should leave a court with "a clear conviction of error." *Pet Food Express Ltd. v. Royal Canin USA, Inc.*, 2011 WL 6140874 (N.D. Cal. Dec. 8, 2011) (quotation and citation omitted).

## **DISCUSSION**

For the reasons set forth below, the Court agrees that the December 27, 2021 Order should be reconsidered in part.

In particular, under Hawai'i law, Lewis was not required to address <u>all</u> of the "unity of interest" factors in order to succeed in showing the merit and sufficiency of his alter-ego claim against Adam for purposes of the default motion. As Lewis asserts in the instant motion, there is simply no such requirement. *See* Dkt. No. 167-1 at 5-6. Therefore, to the extent the December 27, 2021 Order can be construed as applying such a requirement, the Prior Order is overruled.

With that in mind, the next task is to reconsider whether Lewis' Complaint alleges a sufficient claim of alter-ego liability against Adam. In the default motion,

Lewis argued that two entities−LE and CCI−were the alter egos of Adam. With respect to LE, the Court agrees that there are sufficient factual allegations, when accepted as true, to establish alter-ego liability. Notably, Lewis alleges that Adam, *inter alia*, diverted corporate funds or assets from LE for his own uses. Compl. at ¶ 20, Dkt. No. 1. In doing so, Lewis argues that Adam disregarded LE's legal formalities, severely undercapitalized LE, and manipulated assets. Dkt. No. 163-1 at 17-18. The Court agrees and finds these allegations sufficient to show a unity of interest between Adam and LE.

In addition, in light of the allegations that Adam's conduct, in "pilfer[ing]" from the accounts of LE, prevented Lewis from receiving adequate compensation from Adam and LE, Compl. at ¶¶ 21-23, the Court also finds that adherence to LE's separate existence would sanction a fraud or promote injustice. *See Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., Inc.*, 982 P.2d 853, 871 (Haw. 1999), *superseded by stat. on other grounds as noted in Davis v. Four Seasons Hotel Ltd.*, 228 P.3d 303, 308 n.9 (Haw. 2010). In other words, for purposes of the default motion, with respect to LE, the Court finds that the *Eitel*[3] factors, including both the merits of Lewis' alter-ego claim and the sufficiency of the Complaint, weigh in favor of default judgment. *See* Dkt. No. 165 at 13, 20-22.

The same is not true, though, of the merits and sufficiency of the alter-ego

---

[3] *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986).

claim against Adam that involves CCI.  First, unlike the allegations discussed above with respect to LE, the Complaint is devoid of any non-conclusory allegations concerning the unity of interest between Adam and CCI.  *See generally* Compl. at ¶¶ 13-25; *see id*. ¶ 9 (asserting that Adam operated "as the alter ego[] of [CCI] in that [he] treated corporate assets as [his] own and abused the corporate form to the injury of Plaintiff.").  There are, therefore, no allegations for the Court to accept as true with respect to CCI.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Second, in the default motion, Lewis added the following alleged facts concerning Adam's unity of interest with CCI: (1) Adam and Mary Ibarra owned 80% of CCI; (2) CCI shared the same business address with other entities; (3) CCI used the "same attorneys"; (4) CCI was unable to pay its obligations on a note, "suggesting significant undercapitalization in light of the relatively modest sum owed"; and (5) because CCI was unable to meet its note obligations shortly after the sale of LE, a "reasonable inference" is that "the Ibarras contracted with Plaintiff through CCI in order to shield themselves from personal liability and without the intention of paying Plaintiff[.]"  The latter two points are mere speculation.  The third point, concerning the "same attorneys[,]" is unclear.  Notably, while the record is sufficiently clear that CCI and a *different defendant* shared an attorney,

there is no indication in the record that Adam, at least in his individual capacity, used the same attorney, and Lewis does not cite to any in the default motion. See Dkt. No. 163-1 at 19.[4] As for the first two points, even if accepted as true, the Court does not find that they move the needle in suggesting a unity of interest. As the *Robert's* Court explained, not even exclusive stock ownership is "solely determinative on the issue of whether we should disregard the corporate entity[.]" 982 P.2d at 872. Adding only the same business address to the mix would not constitute applying the alter ego doctrine with "great caution and reluctance," as the *Robert's* Court instructed. Id. at 870.[5][6]

Therefore, with respect to the alter-ego claim involving CCI against Adam, the Court finds no reason to disturb the ultimate finding in the Prior Order that default judgment is not appropriate.

---

[4] No attorney has appeared in this case to represent Adam.

[5] The Court adds that, in light of the lack of allegations or evidence suggesting a unity of interest between Adam and CCI, for purposes of the instant motion, the Court has no "clear conviction of error" with respect to the ultimate finding that the *Eitel* factors do not support a default judgment with respect to the alter-ego claim involving CCI against Adam.

[6] In the default motion, Lewis contends that, in a past order, this Court suggested that CCI is the alter ego of Adam. See Dkt. No. 167-1 at 8. The past order, though, concerned a defendant's motion for summary judgment and, thus, the context of the cited statements was entirely different than the one here. Notably, the Court's statements were made to demonstrate why *summary judgment* was not appropriate for another defendant in this case. See Dkt. No. 104 at 17. Here, instead, Lewis must establish the sufficiency of his alter-ego claim against Adam for purposes of default judgment. As explained, he has failed to do that as the claim concerns Adam and CCI.

## CONCLUSION

For the reasons set forth herein, Plaintiff's motion for partial reconsideration, Dkt. No. 167, is GRANTED IN PART and DENIED IN PART. Specifically, the motion is GRANTED to the extent that the Clerk shall enter default judgment in the amount of $255,504.37 against Defendant Adam Ibarra with respect to Plaintiff's alter-ego claim involving Lewis Electric, LLC.[7] The motion is DENIED to the extent that Plaintiff is <u>not</u> entitled to default judgment against Defendant Adam Ibarra with respect to Plaintiff's alter-ego claim involving CCI, Inc.

IT IS SO ORDERED.

Dated: January 28, 2022 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

<u>Lee Lewis v. Lewis Electric, LLC, et al</u>; Civil No. 19-00527 DKW-KJM; **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION**

---

[7] As mentioned earlier, the Court entered default judgment against LE in the amount of $255,504.37. Dkt. No. 166. That judgment was entered after the Court found LE liable to Plaintiff for breach of contract. Dkt. No. 165 at 13-15, 22-25. In light of the findings herein regarding Adam using LE as his alter ego, the above-mentioned liability of LE in the amount of $255,504.37 is now also a liability of Adam Ibarra. *See Robert's Haw. Sch. Bus*, 982 P.2d at 870 ("An attempt to pierce the corporate veil is a means of imposing liability on an underlying cause of action, such as tort or breach of contract.").